## Louisville & Interurban Railroad Company v. Hardin.

(Decided January 20, 1914.)

### Appeal from Oldham Circuit Court.

1. Carriers—Passengers —Personal Injury— Evidence—Peremptory Instruction.—In an action by a passenger against a carrier for damages or personal injuries, evidence examined and held sufficient to take the case to the jury and to sustain a verdict in favor of the plaintiff.

2. Carriers—Passengers—Instructions.—An instruction requiring a carrier to exercise the highest degree of care known to prudent persons in the operation of electric cars, held improper but not prejudicial, in view of the fact that this language was merely prefatory and that the real issue was whether or not those in charge of the car knew, or by the exercise of ordinary care could have known, that plaintiff, who had gotten off the car to let other passengers out, intended to return to the car, and whether or not those in charge of the car afforded him a reasonable opportunity to get on the car, and that this issue was properly submitted to the jury.

3. Carriers—Passengers—Instructions.—Where a passenger gets on interurban car, and because of its crowded condition, stands on the rear platform, and before reaching his destination he and another passenger get off to let other passengers alight, and the conductor is standing in the door when this takes place and in

a position to see them, the company is liable if those in charge of the car knew, or by the exercise of ordinary care could have known, of the passenger's intention to get back on the car and failed to give him a reasonable opportunity to do so.

4. Damages—Excessive.—Where prior to his injury plaintiff was a strong man, and after the injury was thin and emaciated, and the physician who examined him the day of the trial stated that his hip bone was shattered and he was suffering from hemorrhoids and displaced kidney, a verdict of $1,000 cannot be said to be excessive.

WILLIS, TODD & BOND for appellant.

ALBERT C. DICK and EDWARDS, OGDEN & PEAK for appellee

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

In this action for damages for personal injuries, plaintiff, Walker Hardin, recovered a verdict and judgment against the defendant, Louisville & Interurban Railroad Company, in the sum of $1,000. The defendant appeals.

On the night of September 12, 1912, plaintiff, a negro man about 53 years of age, boarded one of defendant's interurban cars at St. Matthews, Kentucky, and paid his fare to Pewee Valley. Plaintiff caried a gun and a bottle of oil. The State Fair was in progress at the time and the car in question was crowded. All the seats in the colored compartment were filled, and other passengers were standing in the aisle. Plaintiff and six or eight others remained on the rear platform. On reaching Lyndon the car stopped to allow passengers to get off at that point. As the passengers intending to alight came towards the rear of the car plaintiff and another negro by the name of Andrew Tyler stepped off the car and stood near the steps while the passengers got off. They did this because the rear platform was crowded and it was necessary for someone to make way for the passengers.

According to the evidence for plaintiff, when Andrew Tyler got back on the car plaintiff attempted to follow him. When he caught the hand-hold and was about to step on the car the car suddenly started and he swung around and fell on his back. During all this time the conductor was standing in the rear door of the car, and not only gave the motorman the signal to proceed, but gave him the signal to stop when he saw plaintiff fall.

The car, after going about two lengths, was stopped. Plaintiff was then assisted into the car, and two negro men gave him their seat. Plaintiff remained in the car until it arrived at Pewee Valley, when he was carried off the car and taken to his home in a buggy.

According to the evidence for the defendant, plaintiff remained on the platform until after the car had started. He then ran after the car and caught the hand-hold, which he held for a short time, and then swung around back of the car and fell on the track with his gun and bottle in his hand. As soon as the conductor saw him catch the hand-hold he immediately rang the bell and the car stopped. Plaintiff then got on the car and walked to the colored compartment without assistance. He took a seat and was laughing and talking with the rest of the colored passengers.

It cannot be said that the evidence was insufficient to take the case to the jury or to sustain the verdict. Plaintiff having paid his fare to Pewee Valley, the conductor knew that he was a passenger until he reached that point. As the conductor knew that plaintiff was a passenger to Pewee Valey, and as the conductor was in the rear door at the time of the accident and in a position to see plaintiff alight from the car for the purpose of allowing the other passengers to get off, it was for the jury to say whether or not he knew, or by the exercise of ordinary care could have known, that plaintiff intended to get back on the car, and whether or not he was given a reasonable oportunity to do so.

In addition to instructions on contributory negligence and the measure of damages, the court instructed the jury as follows:

"It was the duty of the defendant in the operation of its car to exercise the highest degree of care known to prudent persons in the operation of electric cars to avoid injuring plaintiff, and to stop said car a reasonable length of time to allow pasenger to board same.

"If the jury believe from the evidence, that while plaintiff was a passenger on one of defendant's cars at the time and place in the evidence referred to, he stepped from the said car to the depot platform for the purpose of permitting other passengers to alight therefrom, and when he attempted, within reasonable time, to enter said car, the defendant by its agent in charge thereof knew, or by the exercise of ordinary care, could have

known, that plaintiff was attempting to enter said car, and those in charge thereof negligently started same with such force as to throw or cause plaintiff to fall therefrom, and was injured thereby, they should find for the plaintiff.

"Unless the jury believe from the evidence that the conductor in charge of defendant's car knew, or by the exercise of ordinary care could have known, that plaintiff intended getting back on said car, negligently failed to allow plaintiff a reasonable opportunity to enter said car or platform, and plaintiff was thereby injured, they should find for the defendant."

Instruction No. 1 is attacked on the ground that it imposed on the defendant too high a degree of care. It will be observed that it required the defendant to exercise the highest degree of care known to prudent persons in the operation of electric cars. Such is not the rule in this State. Here a carrier of passengers for hire must use the utmost care and skill which prudent men are accustomed to use under like circumstances. We are not, however, disposed to hold the instruction prejudicial on this account. The language complained of was merely prefatory to the real issue, and that issue was whether or not those in charge of the car knew, or by the exercise of ordinary care could have known, that plaintiff was attempting to enter the car, and whether or not they gave him reasonable opportunity to do so. In submitting this, the real issue of the case, the instruction nowhere imposes the highest degree of care, as defined in the first part of the instruction.

In lieu of Instruction A, given by the court, defendant offered an instruction similar in other respects, but omitting the words "or by the exercise of ordinary care could have known." Defendant does not seriously contend that the offered instruction is correct, but insists that those in charge of the car must have known, or seen some fact or circumstance which would impute notice to a reasonably prudent man, that plaintiff intended again to become a passenger. The distinction, however, is more technical than substantial. Ordinarily the law will impute knowledge of a fact which one in the exercise of ordinary prudence ought to know. In view of the fact that the conductor knew that plaintiff was a passenger for Pewee Valley, and that because of the crowded condition of the car he was standing on the rear platform,

and that there was a reasonable probability that some one would have to make way for pasengers intending to leave the car, and of the further fact that he was standing in the door and in a position to see plaintiff and another passenger get off the car for such a purpose, we conclude that it was negligence to start the car if he, in the exercise of ordinary care, could have known of plaintiff's purpose to get back on the car.

Lastly it is insisted that the verdict is excessive. It is true that Dr. Owen, who examined plaintiff the next day, and saw him several times thereafter, testified that there was no outward indication of any injury whatever. The only thing he found wrong with plaintiff was the presence of some pus cells in his urine. Plaintiff, however, testified that he had been a strong man prior to his injury. Since that time he had not been able to do any work. He suffered a great deal from his injuries, and was still suffering from rectum and bladder trouble. Mr. Hitt, who had raised plaintiff, testified that before the accident plaintiff was a very strong man, and that since the accident he was thinner and very much emaciated in appearance. Dr. T. B. Connell testified that he examined plaintiff the day before the trial. He found a shattered condition of the hip bone, apparently due to direct violence. He also found plaintiff suffering from hemorrhoids and a displaced kidney which, in his opinion, could have been caused by the accident. In view of this testimony, we cannot say that the verdict of $1,000 is so excessive as to strike us at first blush as being the result of prejudice or passion.

Judgment affirmed.